Rachel B. Lauesen, ABA No. 0905016
Lauesen Law Team, LLC
521 W. 41st Avenue, Suite 102
Anchorage, Alaska 99503
(907) 206-2030 (Phone)
Rachel@LauesenLaw.com
Attorneys for Plaintiff Sarah Carter

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| SARAH CARTER, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| WALMART, INC., | ) |
| | ) |
| Defendant. | ) |
| _____ | ) Case No. 3:25-cv-_____ |

## COMPLAINT

COMES NOW Plaintiff, Sarah Carter, by and through counsel, Rachel B. Lauesen of Lauesen Law Team, LLC, and for her Complaint against Defendant, Walmart, Inc., alleges and states as follows:

1. Plaintiff, Sarah Carter, is a resident of the State of Alaska and resides in Anchorage, which is located in the Third Judicial District.

2. Defendant, Walmart, Inc., is a Delaware corporation registered to do business in the State of Alaska (hereafter, "Walmart").

### JURISDICTION AND VENUE

3. Jurisdiction in this Court is proper pursuant to 28 U.S.C. § 1332(a)(1), as there is complete diversity of citizenship between the parties.

4. The amount in controversy exceeds $75,000, pursuant to 28 U.S.C. § 1332(a).

5. Venue in the United States District Court for the District of Alaska is proper pursuant to 28 U.S.C. § 1391(b)(2).

6. Specifically, the acts and omissions alleged in this Complaint occurred in Anchorage, Alaska, where Ms. Carter resides and where Defendant regularly conducts business.

## FACTS COMMON TO ALL COUNTS

7. At the entrance of most Walmart stores, including Dimond Walmart, Walmart owns and provides shopping carts for customers to use when collecting items they intend to purchase.

8. When customers leave the store, they often place their shopping bags into their shopping cart, wheel their shopping cart out of the store to their vehicles, unload their shopping bags into their vehicles, and leave their shopping cart in the parking lot near their vehicle or at a designated cart storage area in the parking lot.

9. Walmart employs individuals responsible for gathering shopping carts from the Walmart parking lot and returning them to the Walmart entrance ("shopping cart attendants").

10. These shopping cart attendants typically stack the shopping carts into one another and push a stack of shopping carts at one time from the parking lot into a small

entrance on the side of the main entrance of the store which is there for the purpose of pushing carts into the main entrance for future customer availability and use.

11. The door on the side of the entrance that is used by shopping cart attendants to return shopping carts for future customer availability and use at the Walmart location at 8900 Old Seward Highway in Anchorage, Alaska, (hereafter, "Dimond Walmart") is less than six feet tall so that the view of the entrance area where customers are entering the store and selecting a cart is partially obstructed to a shopping cart attendant.

12. The shopping carts that are available at the entrance to the Dimond Walmart for customer availability and use are stacked with the basket facing the customer, so that customers have to pull the cart out by the basket and often turn their backs to the shopping cart stack to access the handles before proceeding into the store.

13. Because Walmart intends for customers to select carts from one end of the stack while shopping cart attendants return carts to the other end, it is essential that Walmart shopping cart attendants do not look at their phones when pushing shopping carts into the store entrance, in order to prevent bodily injury to Walmart customers.

14. Because the view inside the entrance may be partially obstructed to a shopping cart attendant returning carts, and a Walmart customer may have their back turned while retrieving a cart at the end of the stack, it is essential that Walmart shopping cart attendants not have headphones or listen to music, in order to prevent bodily injury to Walmart customers.

15. A typical Walmart shopping cart weighs around 60 pounds. A stack of 25 carts would weigh approximately 1,500 pounds- only about 400 pounds less than a 2015 Mitsubishi Mirage.

16. Since at least 2013 Walmart has been on notice of the foreseeability of serious bodily injury to its customers by shopping carts being operated at the hands of negligent employees:

    a. In or around 2013, a woman at Walmart Store #1353 in Louisiana claimed she sustained serious injuries when she was struck by shopping carts in the control of a Walmart employee when the customer went to return her shopping cart to the store entrance of Walmart Store #1353.

    b. In or around 2015, a man at a Walmart store in Portland, Maine, was strapping his infant son into the front of a shopping cart in the store entrance when an employee of the store rammed a line of shopping carts into the man's back, which he claimed caused serious injuries to his back.

    c. In or around 2018, two separate customers at two separate Walmart stores in West Virginia claimed they were injured when Walmart employees pushed stacked shopping carts into them. In one of the West Virginia cases, the female customer was getting a shopping cart from the front entrance of the Walmart store when an employee pushed a row of approximately 30 shopping carts into her back, causing serious injuries to her back that required surgical intervention.

d. In or around 2020, a woman in Jasper, Georgia, was struck by a Walmart employee pushing a shopping cart containing crates stacked above the employee's head, causing the Georgia customer serious back injuries.

e. In or around July 9, 2021, a woman from Jefferson Parish, Louisiana, sustained serious head injuries after placing items into a shopping cart and being knocked down by the force of several shopping carts pushed into her from the opposite side by a Walmart employee at the Donaldsonville Walmart.

f. In or around November 19, 2021, a woman at a Wood River, Illinois, Walmart was seriously injured entering the store when she was struck with a stack of shopping carts being returned to the entrance of the store by a Walmart employee.

g. In or around 2022, a woman in New Jersey sustained serious injuries to her neck, back, shoulders, and limbs when she was struck by a shopping cart filled with Nabisco and Mondelēz International products being restocked while shopping at a Walmart store.

17. On or about April 23, 2023, at approximately 6:22 p.m., Ms. Carter entered the Dimond Walmart to purchase sugar and bandages.

18. Ms. Carter went to grab an available shopping cart that was located in a stack of shopping carts at the entrance of the Dimond Walmart with the basket facing toward the entrance and Ms. Carter. Ms. Carter selected her shopping cart, pulled it out, and then turned her back to the shopping cart stack to position herself at the handles behind the shopping cart she selected.

19. With her back to the shopping cart stack, Ms. Carter suddenly felt a force of approximately 25 carts being pushed into her body, primarily on her left ankle, knee, hip, thigh, and forearm.

20. Ms. Carter reported the incident immediately to the "people greeter" who simply responded, "Oh no." Ms. Carter then reported the incident to an associate, but the associate told Ms. Carter to go to customer service. Upon information and belief, the associate to whom Ms. Carter reported after the people greeter was named Rebecca Collado.

21. Ms. Carter attempted to report the incident in person to customer service, but the customer service station was too busy.

22. As Ms. Carter approached the exit to Dimond Walmart, she observed the same shopping cart attendant narrowly avoid hitting an elderly female customer with a shopping cart.

23. As Ms. Carter exited the Dimond Walmart, the same shopping cart attendant that had pushed the cart into her approached Ms. Carter to take her cart from her. Ms. Carter told the cart attendant that he had pushed the carts into her, but he indicated that he could not hear her because he had his headphones in his ears. After the shopping cart employee took his headphone out and Ms. Carter told him that he hit her with a stack of carts, the shopping cart attendant said, "Oh, okay," and then put his earphones back into his ears.

*Sarah Carter v. Walmart, Inc.,* Case No. 3:25-cv-_____
Complaint
Page 6 of 17

Case 3:25-cv-00074-HRH    Document 1    Filed 04/14/25    Page 6 of 17

24. Ms. Carter attempted to call the Dimond Walmart from her car in the parking lot to report the incident. From her car in the parking lot, she observed the same shopping cart attendant continue to look at his cellphone, with airpods in his ears, while pushing shopping carts between the Walmart building and the Walmart parking lot.

25. Ms. Carter placed at least 20 calls to the Dimond Walmart in an attempt to report what happened to her and ensure that Walmart was aware that it had a shopping cart attendant pushing shopping carts back and forth from the parking lot while looking at his phone and with his hearing obstructed. It took a day in order for Ms. Carter to be able to speak to someone at the Dimond Walmart, and that person was team lead named Kimberly, whose last name was not provided.

26. As a direct and proximate result of the Dimond Walmart shopping cart attendant hitting Ms. Carter with a stack of shopping carts on April 23, 2023, Ms. Carter was diagnosed with nonocclusive deep venous thrombus ("DVT") in her lower left leg, which required her to be placed on blood thinners for six months. Ms. Carter also sustained an injury to her left knee, which required physical therapy for six months. Additionally, she sustained an injury to her left hip, for which she received physical therapy, an injection, and surgery.

27. Ms. Carter's injuries have required her to seek medical treatment and physical therapy for two years. To date, Ms. Carter's medical bills have totaled approximately $235,000.

*Sarah Carter v. Walmart, Inc.,* Case No. 3:25-cv-_____
Complaint
Page 7 of 17

Case 3:25-cv-00074-HRH    Document 1    Filed 04/14/25    Page 7 of 17

28. As a direct and proximate result of the negligence of the Dimond Walmart employee in hitting Ms. Carter with a shopping cart on April 23, 2023, Ms. Carter has sustained pain and suffering, loss of enjoyment of life, inconvenience, emotional distress, and other compensatory damages. Ms. Carter further asserts that the aforementioned actions have caused ongoing physical, mental, and emotional harm, all of which are recoverable under applicable law.

29. Dimond Walmart completed an incident report on or about April 24, 2023. Walmart's incident report reflects that Ms. Carter reported that the shopping cart attendant had airpods in his ears and that Ms. Carter visited customer service to report the incident, but that customer service was too busy.

30. Upon information and belief, the incident report was forwarded to Walmart Claims Services.

31. On or about May 5, 2023, Ms. Carter spoke with Walmart Claims Services employee Julia Moore. Ms. Carter told Ms. Moore that she had walked around the store to buy sugar and bandages, went to a busy customer service desk, and observed the shopping cart attendant looking at his phone and wearing airpods in his ears. Ms. Carter further stated that she later saw the shopping cart attendant almost hit another customer while looking at his phone and wearing airpods in his ears. Additionally, Ms. Carter observed the shopping cart attendant from her car in the parking lot, pushing shopping carts around while still looking at his phone and wearing

airpods in his ears.  Ms. Carter told Ms. Moore that all this information should be reflected in Walmart's video footage.

32. On May 19, 2023, Ms. Carter's counsel emailed a letter to Ms. Moore that she was representing Ms. Carter and said, "Please ensure that all video footage of the parking lot and Walmart store for the relevant times in question are preserved.  All documentation, reports, investigations and other information pertaining to Ms. Carter and the area of the parking lot in question must also be preserved.  Failure to do so will result in an additional claim for spoliation of evidence."

33. Ms. Moore acknowledged receipt of the letter in a letter emailed on May 25, 2023.

34. On June 1, 2023, Ms. Carter emailed Ms. Moore and stated, in underline, "<u>Please confirm that Walmart has instituted a litigation hold or otherwise preserved all audio or video, including electronic records, relating to this incident and Ms. Carter's presence in and out of the store</u>."

35. On February 24, 2025, Julia Moore informed Ms. Carter that Walmart only had preserved video footage from two cameras, one of which showed Ms. Carter getting hit by the carts, and the other showing Ms. Carter getting hit by the cart from another angle but claimed that video was obstructed.  On March 21, 2025, Ms. Moore informed Ms. Carter that Walmart preserved only the video of the incident and video of Ms. Carter walking into the store and engaging with the people greeter.

36. Walmart did not preserve the video footage of Ms. Carter inside the Dimond Walmart store or in the parking lot after she was struck, nor did it preserve the video footage of the shopping cart attendant during the time Ms. Carter was in the store and in the parking lot, when she alleges he was looking at his phone with airpods in his ears pushing stacks of shopping carts and nearly hitting at least one other customer.

## FIRST CAUSE OF ACTION

### [NEGLIGENCE]

37. Plaintiff Sarah Carter re-alleges and fully sets for the allegations contained in Paragraphs 1-36 of this Complaint.

38. Walmart has a duty to hire, supervise, train, and entrust its shopping cart attendants in a non-negligent manner to prevent foreseeable injury to customers while they are performing their duties in operating shopping carts.

39. Walmart breached a duty of care when it negligently hired, supervised, trained, and/or entrusted its shopping cart attendant at the Dimond Walmart.

40. Walmart breached a duty of care when it did not provide any warning to either the public or the shopping cart attendants to watch out for one another when returning and retrieving carts from the entrance of the Dimond Walmart.

41. As a direct and proximate cost of Walmart's negligent hiring, supervision, training, entrustment, and failure to warn, Ms. Carter sustained serious

injuries when she was struck with a stack of shopping carts operated by a Dimond Walmart shopping cart attendant on April 23, 2023.

42. Ms. Carter's injuries have caused her to incur damages in an amount to be proven at trial herein.

## SECOND CAUSE OF ACTION

## NEGLIGENCE PER SE

43. Plaintiff Sarah Carter re-alleges and fully sets for the allegations contained in Paragraphs 1- 42 of this Complaint.

44. Walmart was negligent per se in that its acts and omissions constituted violations of its own established standards of shopping cart operations, parking lot safety protocols, and/or parking lot attendant supervision. These standards are specifically designed to protect customers, such as Ms. Carter, from the type of harm sustained by Ms. Carter on April 23, 2023. Walmart's failure to adhere to these standards directly contributed to the injuries sustained by Ms. Carter and constitutes a breach of its duty of care.

45. Under AS 11.41.220(a)(4), a person commits a crime of assault in the third degree if that person, with criminal negligence, causes serious physical injury under AS 11.81.900(b)(60)(B) to another person by means of a dangerous instrument.

46. Under AS 11.81.900(a)(4), a person acts with criminal negligence if with respect to a result or to a circumstance described by a provision of law defining an offense when the person fails to perceive a substantial and unjustifiable risk that the

result will occur or that the circumstance exists; the risk must be of such a nature and degree that the failure to perceive it constitutes a gross deviation from the standard of care that a reasonable person would observe in the situation.

47. Under AS 11.81.900(b)(16)(A), a dangerous instrument is anything that, under the circumstances in which it is used, attempted to be used, or threatened to be used, is capable of causing death or serious physical injury.

48. Under AS 11.81.900(b)(60)(B), a serious physical injury is a physical injury that causes serious and protracted disfigurement, protracted impairment of health, protracted loss or impartment of a body member or organ, or that unlawfully terminates a pregnancy.

49. A stack of approximately 25 shopping carts, weighing around 1,500 pounds, pushed into an area where Walmart customers are retrieving carts from the other end by a Walmart employee looking at his phone and wearing airpods in his ears, resulting in a blood clot, knee injury, and hip injury requiring a minimum two years of medical and rehabilitative treatment, constitutes third-degree assault under AS 11.41.220(a)(4). This statute was designed to prevent harm to persons, like Ms. Carter from the injuries that occurred.

50. As a direct and proximate cause of Walmart's negligence per se, Ms. Carter was damaged in an amount to be proven at trial herein.

## THIRD CAUSE OF ACTION

## VICARIOUS LIABILITY

51. Plaintiff Sarah Carter re-alleges and fully sets for the allegations contained in Paragraphs 1- 50 of this Complaint.

52. An employer is legally responsible for an employee's conduct that is within the course and scope of the employee's employment.

53. Ms. Carter was injured by a Walmart shopping cart attendant on April 23, 2023, while the shopping cart attendant was acting within the scope of his employment, i.e., returning carts to the shopping cart stack in the entrance of the Dimond Walmart store.

54. Walmart is vicariously liable for the negligent conduct of its shopping cart attendant for the injuries proximately caused by the shopping cart attendant and associated damages in an amount to be proved at trial herein.

## FOURTH CAUSE OF ACTION

## SPOLIATION OF EVIDENCE

55. Plaintiff Sarah Carter re-alleges and fully sets for the allegations contained in Paragraphs 1- 54 of this Complaint.

56. Walmart had a duty to preserve all video footage of Ms. Carter and its parking lot attendant inside of the Dimond Walmart and in the Dimond Walmart parking lot when it received notice of Ms. Carter's claim under its internal incident reporting policies.

57. Walmart had a duty to preserve all video footage of Ms. Carter and its parking lot attendant inside of the Dimond Walmart and in the Dimond Walmart parking lot when Ms. Carter gave notice to Walmart that all footage must be preserved.

58. Walmart intentionally or negligently failed to preserve the video footage of Ms. Carter except for two short clips from two cameras.

59. Walmart intentional or negligently failed to preserve the video footage of its shopping cart attendant.

60. The video footage that Walmart failed to preserve would have shown Ms. Carter demonstrating an injury as she walked through the store, her attempts to report to Walmart, and the shopping cart attendant's blatant and obvious inattentiveness in his operation of shopping carts in and outside the store, all of which denies Ms. Carter the opportunity to fully prosecute her claim and establish Walmart's liability for her injuries.

61. As a direct and proximate cause of Walmart's negligent or intentional spoliation of evidence, Ms. Carter is entitled to a burden-shifting instruction and/or compensation for her injuries, should the spoliation prejudice the prosecution of her action, in an amount to be determined at trial herein.

## PUNITIVE DAMAGES

62. Plaintiff Sarah Carter re-alleges and fully sets for the allegations contained in Paragraphs 1- 61 of this Complaint.

63. Walmart has acknowledged in its annual shareholder reports that the financial conditions of its customers, including their reliance on taxpayer-funded social assistance programs such as the Supplemental Nutritional Assistance Program (SNAP) and other public assistance programs, significantly impacts its revenue and profits. A reduction in these programs is a key factor influencing Walmart's financial performance.

64. Walmart is aware that its customers can be seriously injured if struck by shopping carts operated negligently by shopping cart attendants, which constitutes third degree assault AS 11.41.220(a)(4). Despite this awareness, Walmart has failed to meaningfully prevent Walmart customers from being feloniously assaulted by its shopping cart attendants at its stores.

65. Walmart is aware that customers from economically disadvantaged backgrounds including those from racial minorities or those facing other afflictions or challenges, often have limited access to the civil justice system. These types of customers may not present well to juries and/or may experience barriers to accessing adequate healthcare.

66. For every lawsuit filed against Walmart for serious injuries to customers being struck by shopping carts operated by negligent Walmart employees, there is an exponential number of serious injuries to customers for this same conduct that do not file lawsuits.

*Sarah Carter v. Walmart, Inc.,* Case No. 3:25-cv-_____
Complaint
Page 15 of 17

67. Walmart is aware and callously knows that it can settle claims brought by financially disadvantaged customers for nominal amounts of money, requiring these customers to sign a confidentiality agreement as a condition of the settlement.

68. Walmart makes it unreasonably difficult for customers to report incidents, regularly insists on broad confidentiality agreements to bind unknowing customers, and allows video evidence to be destroyed, all in an effort to limit its awareness of dangerous conduct or conditions, stifle dialogue, attack the credibility of claimants, and avoid liability.

69. Walmart's prioritization of profits over public safety is outrageous and demonstrates a reckless indifference to the physical and mental health and safety of its customers, who entrust their limited and scarce funds to Walmart on a daily basis. This conduct ignores the fundamental right of these customers to enter its store without the risk of being negligently assaulted by its unsupervised, untrained, unqualified, and low-paid employees.

70. Punitive damages should be awarded in favor of Ms. Carter and against Walmart to punish Walmart for its negligent conduct and to deter Walmart, as well as others similarly situated, from engaging in such negligent behavior in the future.

## PRAYER FOR RELIEF

NOW, WHEREFORE, Plaintiff Sarah Carter prays for the following relief from this Honorable Court;

1. A money judgment in Ms. Carter's favor, and against Walmart, Inc. in an amount to be proven at trial herein;

2. Costs, prejudgment interest, and attorney's fees;

3. Punitive damages;

4. All other such relief that this Court deems just and equitable.

DATED this 14th day of April 2025, at Anchorage, Alaska.

LAUESEN LAW TEAM, LLC
Attorneys for Plaintiff
SARAH CARTER

By: _____
Rachel B. Lauesen, ABA No. 0905016

The Lauesen Law Team, LLC
521 W. 41st Avenue Suite 102
Anchorage, AK 99503
Tel (907) 206-2030
Fax (907) 206-2040
Rachel@Lauesenlaw.com